No. 42,918

STATE OF KANSAS, *Appellee,* v. ROSS HANSEN, *Appellant.*

(427 P. 2d 627)

Opinion filed May 13, 1967.

*William F. Stahl,* of Junction City, argued the cause and was on the brief for the appellant.

*Dean C. Batt,* special county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Appellant has appealed directly from the judgment and sentence imposed upon him following his conviction by a jury of the offense of grand larceny of two cattle.

The offense allegedly occurred January 18, 1961. Trial commenced May 18, 1961. Proceedings in the trial court concluded June 9, 1961, at which time defendant-appellant's motion for new trial was overruled and he was sentenced to the state penitentiary for a term of not to exceed seven years. Appellant was then represented by retained counsel who promptly filed notice of appeal to this court. This appeal was not perfected, but was abandoned by appellant's counsel. Later, after he had been incarcerated in the penitentiary, appellant filed his *pro se* notice of appeal and the case was docketed in this court. Appellant filed numerous *pro se* pleadings and briefs; eventually the appeal was set for oral argument in this court on December 3, 1963. Upon examination of the voluminous papers filed by appellant it was then discovered he had at one time asked for the appointment of counsel to represent him upon appeal. Appellant had meanwhile been advised of Rule No. 56 of this court, providing for the appointment by the district court of such counsel, but he had made no application pursuant to this rule. This court eventually directed the trial court to appoint counsel for appellant to represent him upon his appeal. Counsel who was first appointed proved unsatisfactory to appellant and was discharged at appellant's request although the court found such counsel had

diligently represented him. Appellant declined appointment of any attorney from Marion county to represent him and asked instead to have an attorney from Shawnee county appointed. This latter request was denied and appellant sought again to represent himself for a period of time. Finally, present counsel, a practicing attorney of Geary county and a member of the bar of the same judicial district in which appellant was convicted, was appointed to represent appellant upon appeal.

The case has been rebriefed and reargued and, despite certain deficiencies due to appellant's unfamiliarity with procedural requirements, we go directly to the merits.

Appellant contends his oral confession admitting theft of the cattle was improperly admitted into evidence over his objection.

It appears that appellant, who had been taking insulin for a diabetic condition, was arrested at his home about 9:00 p. m. on January 24, 1961, and taken to the county jail. The next morning the undersheriff of Marion county went to appellant's home to get appellant's insulin kit but he brought back the wrong syringe. Appellant had no insulin until about 8:00 p. m. January 25. About 9:00 p. m. that evening the undersheriff, in the presence of a state livestock brand examiner, conversed with appellant. The officer advised appellant he could have an attorney, that he was entitled to a lawyer if he cared for one. Appellant replied that he didn't need one yet. Appellant stated, ". . . you have got it on me, you got the check, you know where I sold the cattle"; appellant further stated he had walked across the pasture of the owner of the cattle early in the evening and penned up the cattle in the pen there, then loaded them sometime after midnight, took them to his home and early the next morning drove to Wichita and sold them to a commission company.

Prior to the confession being received in evidence the court, in the absence of the jury, held a hearing as to the circumstances under which the confession was given.

At this hearing on behalf of the prosecution the undersheriff and the brand examiner testified, as well as a medical doctor. In addition to that which has been related, the undersheriff, who had known appellant twelve to fifteen years, testified appellant acted normally and seemed to be in perfect mental and physical health at the time of his confession; that appellant had previously told him he was all right and that he (appellant) thought he could get along all right

without his insulin. The brand examiner noticed no indication of illness or peculiar behavior although he had not previously been acquainted with appellant. He also testified as to statements made by appellant. The medical witness testified hypothetically that a lack of insulin for a twenty-four to thirty-six hour period on a person such as appellant would not have affected that person's mental faculties under the circumstances.

At this out-of-court hearing appellant testified as to his habit of taking insulin and that he felt badly when deprived of it; that on the evening, in question he went to bed immediately after taking his insulin shot and he had no recollection of any conversation with the undersheriff.

At the conclusion of this hearing the court made the following ruling:

"The County Attorney has made a statement that the defendant was 54 years of age, and there isn't any evidence to that effect; however, the court observes that he is a man of some 50 years of age and is an adult, at least. The court finds further that the statements were freely and voluntarily made and that the defendant had been properly advised of his rights under the law and that at the time of making the statements that he was in possession of all of his faculties and accordingly admissible and' will be admitted, and that is the order.

"You may bring in the jury."

The court then permitted testimony as to the confession to go to the jury. No complaint is made concerning the instructions given the jury as to how this evidence should be considered by it and we must assume the jury was correctly instructed.

The procedure followed by the trial court in hearing evidence in the absence of the jury and deciding as a preliminary matter whether the appellant's statement was freely and voluntarily made without force or coercion was in conformity with the established rules of this court (*State v. Seward*, 163 Kan. 136, 181 P. 2d 478; *State v. Latham & York*, 190 Kan. 411, 375 P. 2d 788, cert. denied, 373 U. S. 919, 10 L. Ed. 2d 418, 83 S. Ct. 1310; *State v. King*, 194 Kan. 629, 400 P. 2d 975; *State v. Jenkins*, 197 Kan. 651, 421 P. 2d 33; *State v. Greenwood*, 197 Kan. 676, 421 P. 2d 24).

Appellant argues *State v. Seward*, supra, supports his position. In *Seward* a seventeen year old boy was taken to police headquarters, questioned without notice to his parents and, without any of the usual warnings, directed to sign several pieces of paper. At trial his purported confession was admitted by the court without

preliminary investigation in the absence of the jury and the jury was not instructed how it should consider or evaluate the confession. This court reversed the conviction and granted a new trial because the trial court refused to hear evidence or consider as a preliminary matter whether the confession was freely and voluntarily made and because of the trial court's failure to give proper jury instructions upon the confession.

No similarity exists between *Seward* and the instant case. Here the trial court followed the injunction established in *Seward* in which it was stated:

"The question of whether the confession had been freely and voluntarily made without force or coercion being used, and without promises, should have been in the first instance considered by the trial court in the absence of the jury and before it was offered to the jury. Then if the trial court had been convinced that it was admissible it could have been given the jury under proper instructions." (p. 144.)

Appellant principally emphasizes he was not in possession of his faculties due to lack of insulin. The court found against him on this factual issue.

The court's findings that appellant's statements were knowingly and voluntarily made were supported by substantial evidence and will not be disturbed on appeal absent any showing of clear and manifest error.

Appellant asserts the court erroneously admitted into evidence certain wood or paint chips and the tailgate of a trailer. The circumstances were thus: The owner of the cattle fed and counted them every day; on January 18, 1961, he found two steers missing; he checked his fences and found no breaks; he interviewed his neighbors as to strays and found none; he notified the sheriff's office; the undersheriff investigating the loss noticed fresh manure in the owner's loading chute, which chute was unpainted and had not been used since September, 1960, and he found paint smears on the chute and small pieces of wood or paint chips below the chute; he placed these latter in an envelope and delivered them to the sheriff; the officer was familiar with appellant's trailer and noted that the paint chips were similar in color to the trailer; the sheriff removed a section from appellant's trailer tailgate and delivered it along with the paint chips to a laboratory supervisor of the Kansas Bureau of Investigation; the supervisor testified at length as to his qualifications for making laboratory comparison and analysis of paint and, as a result of his examination of the items submitted to

him, gave as his opinion that the paint chips found at the cattle chute came from appellant's trailer. Identification was facilitated because there had been three layers of different colored paint on the trailer.

Appellant objected to the introduction of the paint chips because there was insufficient showing as to their custody and transmittal to the witness who testified.

The circumstances of the finding by the investigating officer of the chips at the scene of the theft, their removal, delivery to the sheriff and then to the laboratory analyst who testified were all properly shown by a complete custodial chain of evidence, and the objection was wholly without merit.

The tailgate, which was removed from appellant's trailer by the sheriff, was received into evidence after being identified and marked as plaintiff's exhibit No. 24 as shown by the following:

"MR. REGIER [appellant's attorney]: I have no objections to that being admitted in evidence.

"MR. WESTERHAUS: I offer Plaintiff's Exhibit No. 24 in evidence.

"THE COURT: It is admitted."

Moreover, no mention of erroneous admission into evidence of the trailer tailgate was made in appellant's motion for new trial.

Under well-established rules in this state objection to incompetent evidence must be interposed at the time such evidence is offered before it can be made the basis for reversing a judgment (*State v. Donahue*, 197 Kan. 317, 416 P. 2d 287; *State v. Lee*, 197 Kan. 463, 419 P. 2d 927, cert, denied, 386 U. S. 925, 17 L. Ed. 2d 797, 87 S. Ct. 900, rehearing denied, 386 U. S. 978, 18 L. Ed. 2d 142, 87 S. Ct. 1170).

Appellant complains generally of insufficiency of evidence to support his conviction. In addition to that which has been related, the evidence revealed the following: A Butler county rancher testified that in the fall of 1960 he sold Hereford yearling steers bearing his registered brand to the Flint Hills Livestock Commission Company at Wichita; these were the only cattle sold by him that year; in turn the commission company sold them to Mr. Edward McGinness, their owner at the time of the theft; the two stolen steers bearing the registered brand were missing January 18, 1961; the same day appellant sold two Hereford steers to the same livestock commission company, receiving the sum of $385.11 therefor; the commission company sold the two cattle the same day to the

Axcel Cattle Company which placed them in its feed lot at Abilene; these were traced and the owner, Mr. McGinness, identified the two branded cattle in the Abilene feed lot as being his property.

Appellant testified in his own behalf before the jury. As indicated, he repudiated his confession saying he had no recollection of it. He admitted selling two Hereford steers to the commission company on January 18, 1961, but contended they were some he had raised. He also indicated several named neighbors had borrowed his trailer. In passing, it may be noted appellant made no attempt to explain why cattle allegedly raised by him bore the registered brand of another.

In rebuttal, on behalf of the prosecution, the neighbors who were named denied they had borrowed the trailer during January of 1961. Two neighbors testified that although nearly all of appellant's farm was visible from the road and they had driven past it in January, 1961, and one had worked on appellant's farm several days during that time, neither had seen Hereford cattle there during January, 1961.

This brief recital demonstrates the jury's finding of guilty is amply supported by the evidence.

Appellant in his *pro se* briefs contends his retained counsel was incompetent. We have examined the transcript of the trial proceedings and find this and other contentions raised as to matters occurring after the trial to be without merit. Finding no error in the judgment and sentence they must be and are affirmed.

APPROVED BY THE COURT.