[No. 46165.   En Banc.   December 13, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. MARVIN EARL HUELETT, *Petitioner*.

*Bruce D. Erickson*, for petitioner.

*Christopher T. Bayley, Prosecuting Attorney*, and *J. Robin Hunt* and *Douglas B. Whalley, Deputies*, for respondent.

BRACHTENBACH, J.—Petitioner appeals a second–degree burglary conviction. The Court of Appeals affirmed. We granted review on a single issue, *i.e.*, the propriety of admitting testimony as a recollection refreshed. We affirm.

An essential element of the State's burglary case was the testimony of a former police officer who investigated that burglary. A fingerprint expert identified a print lifted from the burglarized premises as that of the defendant. The testimony of the former police officer was essential to connect the fingerprint with the burglarized premises and the defendant.

On direct examination the former police officer, apparently using his written police report, testified that in response to a reported burglary he had gone to the premises and lifted the fingerprint from an object in the apartment. The entire cross–examination was as follows:

Q. You are using something to refresh your memory?
A. Yes, sir, I am.
Q. Do you have an independent recollection of this investigation?
A. No, I don't.
Q. So beyond what you have in front of you, you have no recollection of this?
A. That's correct.

██ We are concerned here with the recollection refreshed as distinguished from a recollection recorded. That distinction was explained in *State v. Little,* 57 Wn.2d 516, 520–21, 358 P.2d 120 (1961), where we said:

> [A] distinction must constantly be borne in mind between (1) refreshing recollection, and (2) a past recollection recorded. In the former situation, with which we are concerned here, the notes or memoranda used by the witness are not placed in evidence, but are used to trigger his psychological mechanisms of recognition and recollection, enabling the witness to then testify from his own memory. The testimony is the evidence, the writing is not. With respect to past recollection recorded, the notes or memoranda *are* the evidence . . .
>
> . . .
>
> In short then, the criteria for the use of notes or other memoranda to refresh a witness' recollection are (1) that the witness' memory needs refreshing, (2) that opposing counsel have the right to examine the writing, and (3) that the trial court be satisfied that the witness is not

being coached—that the witness is using the notes to aid, and not to supplant, his own memory.

(Footnote omitted.)

As stated in *State v. Little, supra,* allowing the use of notes to refresh the memory of a witness lies within the discretion of the trial court. This is the general rule.

The extent to which the witness may use such a memorandum is for the trial judge in his discretion to determine, and his ruling will not be disturbed unless there has been an abuse of such discretion.

2 C. Torcia, *Wharton's Criminal Evidence* § 415 (13th ed. 1972).

Our function is thus limited. The sole issue is whether the trial judge abused his discretion. Such abuse occurs only if no reasonable person would take the view adopted by the trial court. *State v. Blight,* 89 Wn.2d 38, 41, 569 P.2d 1129 (1977).

The challenged testimony consisted of three questions and three answers. What was the essence of that cross–examination testimony which led an able, experienced trial judge to admit it as a recollection refreshed? Examining that testimony, it encompasses three items. First, the witness was using something to *refresh* his memory. Second, the witness had no independent recollection of his investigation of the burglary. So far that is a classic instance of a recollection refreshed. Only the third element of the question and answer on cross–examination raises any issue. The single question and answer was: "So beyond what you have in front of you, you have no recollection of this? A. That's correct." At best this one question and answer is ambiguous but certainly it implies that with what he had in front of him the witness did have a recollection. The witness had already stated that he was using his police report to *refresh his memory.* It is a fair and reasonable interpretation of the question and answer that the witness had refreshed his memory as to the matters in his report and that he had no independent recollection as to other matters. The question

and answer can and should be read in that manner, especially in view of the earlier question and answer that he was refreshing his memory. It is clear that the trial court viewed it as a showing of a recollection refreshed.

Given the fact that the cross–examination reveals a very brief line of questioning that at best is ambiguous, we cannot and should not substitute our judgment for the exercise of discretion by an experienced and highly able trial judge.

It is true that in oral argument before this court the deputy prosecutor speculated that the witness had no recollection at all and was not refreshing his memory. However, it is not the impression of the prosecutor made 2 years after the event that is determinative. It is the testimony before the trial court which must control.

In summary, the witness stated that he was refreshing his memory to the extent of his written police report. Beyond that he had no independent recollection of other events connected with his investigation. That is enough. The discretion and interpretation of the trial court should not be cast aside under such circumstances.

The judgment of conviction is affirmed.

ROSELLINI, DOLLIVER, and WILLIAMS, JJ., and PATRICK, J. Pro Tem., concur.

WRIGHT, J. (dissenting)—I dissent. The facts are correctly stated by the majority. However, a few additional facts will assist in better understanding the matter.

On December 10, 1976, the apartment occupied by Edward O'Shea was burglarized. On March 3, 1977, defendant Huelett was charged by information with burglary. After a jury trial he was found guilty April 26, 1977.

Three witnesses testified at the burglary trial. The testimony of each was essential to Huelett's conviction. O'Shea testified that his apartment was burglarized, that he does not know Huelett and that he did not give him permission to enter the apartment. Marsha Jackson testified she is a qualified fingerprint expert and that Huelett's prints match

those found in the apartment. The fingerprints identified as Huelett's by Ms. Jackson were found in the apartment by Larry Allen, a police officer at the time of the burglary, but not at trial time. Without Allen's testimony, the chain of evidence was broken—there was not proof that the prints identified as Huelett's came from the O'Shea apartment.

Allen was called as a witness. With the police report in front of him, he testified about his burglary investigation. The cross–examination of Allen by Huelett's trial counsel follows:

Q. You are using something to refresh your memory?
A. Yes, sir, I am.
Q. Do you have an independent recollection of this investigation?
A. No, I don't.
Q. So beyond what you have in front of you, you have no recollection of this?
A. That's correct.

It is also significant that when Allen was asked about the fingerprint on the "money bowl" mentioned in his report and was asked what he meant by "money bowl" he replied: "Don't recall."

Allen did not read verbatim from the report, nor was it offered into evidence. The State elected to rely solely upon testimony from supposed refreshed recollection.

During oral argument, counsel for the State made several concessions. At one point he referred to Allen as "a witness who comes in who is no longer with the police department who gives answers on direct which indicate he doesn't know and doesn't care much about the case; and who gives answers on cross–examination that indicate he has no independent recollection beyond what is in the report." Later in oral argument, counsel stated: "In my opinion it is certain that he had no independent recollection with the writing or without the writing." It must be remembered that the deputy prosecuting attorney who made these concessions in oral argument was trial counsel.

The majority concludes on the basis of the first two questions and Allen's responses set out above that this is "a classic instance of a recollection refreshed." I disagree. The questions were not asked during direct examination in order to lay a foundation for the testimony. If they had been, the majority's position might approach plausibility. Instead the questions were asked *after* officer Allen already had testified *on direct* by using the report. And it was *after* reviewing the report and testifying on direct that he stated *on cross–examination* that he did not have any independent recollection. Surely Allen should have had a present independent recollection at this point. The cases clearly state that after the review an independent recollection must exist.

Here Allen testified unequivocally on cross–examination that there was not an independent recollection. In *Preston v. Metropolitan Life Ins. Co.*, 198 Wash. 157, 87 P.2d 475 (1939), the witness also acknowledged she had no independent recollection. There, as here, there was no attempt to introduce the memorandum—stenographic notes—as an accurate record. Rejecting her testimony as inadmissible, this court concluded "the trial court ruled correctly in refusing to permit the witness to appear to be giving evidence from refreshed recollection when she had no recollection." *Preston*, at 164.

The witness must actually recall the occurrence, event, or matter in his own mind.

In *State v. Coffey*, 8 Wn.2d 504, 112 P.2d 989 (1941), we said at page 508:

> The general rule is that entries in diaries are inadmissible as evidence, although they may be used to refresh the memory of a witness *if after such use he can testify from an independent recollection of the matter.* Stated another way: A contemporaneous memorandum made by a witness may be used to refresh his memory; that is, a witness may be allowed to refresh his memory by looking at a printed or written paper or memorandum and, if he thereby recollects a fact or circumstance, he may testify to it. It is not the memorandum which is evidence but

the recollection. *Schmidt v. Van Woerden,* 181 Wash. 39, 42 P. (2d) 3; *State v. Jensen,* 194 Wash. 515, 78 P. (2d) 600.

(Italics mine.)

In *McCoy v. Courtney,* 30 Wn.2d 125, 128, 190 P.2d 732 (1948), we said in part:

> The witness testified from personal knowledge and independent recollection, although he had refreshed his memory by checking some of the records of the Kerr Motor Company. To do as he did was entirely proper. *Schmidt v. Van Woerden,* 181 Wash. 39, 42 P. (2d) 3; *State v. Paschall,* 182 Wash. 304, 47 P. (2d) 15.

Courts in other states as well as text writers often have stated or indicated that after reviewing the memorandum, the witness must testify from an independent recollection. 5 C. Chamberlayne, *The Modern Law of Evidence* § 3507, at 4818 n.1 (1916); 2 E. Conrad, *Modern Trial Evidence* § 1176, at 336 (1956); 2 B. Elliott, *The Law of Evidence* § 872, at 153–54 (1904); J. McKelvey, *Handbook of the Law of Evidence* § 250, at 461 (3d ed. 1924); Annot., *Refreshment of Recollection by Use of Memoranda or Other Writings,* 82 A.L.R.2d 473, 497 (1962); 10 Am. Jur. *Proof of Facts, Refreshing Recollection* Proof 1, at 258 (1961); 81 Am. Jur. 2d *Witnesses* § 445, at 453–54 (1976); 98 C.J.S. *Witnesses* § 358, at 85 (1957); *Moncrief v. Detroit,* 398 Mich. 181, 187–90, 247 N.W.2d 783 (1976); *Otinger v. State,* 53 Ala. App. 287, 291, 299 So. 2d 333, 336–37 (1974); *State v. Crow,* 486 S.W.2d 248, 257 (Mo. 1972); *Great Atlantic & Pac. Tea Co. v. Nobles,* 202 So. 2d 603, 605 (Fla. Ct. App. 1967); *State v. Scott,* 199 Kan. 203, 206, 428 P.2d 458, 460 (1967); *State v. Adams,* 181 Neb. 75, 82, 147 N.W.2d 144, 151 (1966); *People v. Griswold,* 405 Ill. 533, 541–42, 92 N.E.2d 91, 95 (1950); *State v. Perelli,* 128 Conn. 172, 175, 21 A.2d 389, 390–91 (1941).

In *Bank of Poneto v. Kimmel,* 91 Ind. App. 325, 168 N.E. 604 (1929), it was held that where cross–examination develops that the witness has no independent recollection, even after seeing the book and entries therein, it is proper

to strike the testimony. In *People v. Jenkins,* 10 Ill. App. 3d 166, 171, 294 N.E.2d 24, 29 (1973), it was held that "a witness may refresh his memory by the use of any instrument, but must then testify from his own independent memory."

The primary dispute between this dissent and the majority is over whether the answers of the witness indicate a present recollection. It is difficult and involves an extreme stretching of the imagination to conceive how the majority could reach the result it did. Without repeating the brief cross–examination it seems the only reasonable construction to be given to the witness' testimony is that he recalls nothing, including the events that he is reading about. That does not satisfy the requirements of the rule on refreshed recollection.

It is true the *use of memoranda* is within the discretion of the trial court. *State v. Little,* 57 Wn.2d 516, 358 P.2d 120 (1961). That, however, does not and cannot change this rule: Before a witness may testify by using a writing to refresh his recollection, the witness must be able to state, after examining the writing, that he now recalls the facts therein on the basis of his own present—although refreshed—memory. *Harper, Drake & Assocs., Inc. v. Jewett & Sherman Co.,* 49 Wis. 2d 330, 342, 182 N.W.2d 551, 558 (1971).

In the instant case the trial court clearly erred by refusing to strike Allen's testimony. Likewise, the Court of Appeals erred in affirming the trial court. Because the testimony was improper in the posture in which it was offered—as refreshed recollection—it should not have been admitted.

For the reasons stated, I dissent and would reverse the trial court and the Court of Appeals.

UTTER, C.J., and HOROWITZ and HICKS, JJ., concur with WRIGHT, J.